UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT LONNELL SMITH, JR., <br><br> Plaintiff <br><br> v. <br><br> WASHOE COUNTY, et al., <br><br> Defendants | Case No.: 3:21-cv-00123-ART-CSD <br><br> **Report & Recommendation of United States Magistrate Judge** <br><br> Re: ECF No. 89 |

This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is defendant Garza's motion for summary judgment. (ECF No. 89.) Plaintiff filed a response. (ECF No. 96.) Garza filed a reply. (ECF No. 87.)

After a thorough review, it is recommended that Garza's motion be granted.

**I. BACKGROUND**

Plaintiff is currently an inmate in the custody of the Nevada Department of Corrections (NDOC), but the allegations giving rise to his pro se complaint under 42 U.S.C. § 1983 took place when Plaintiff was a pretrial detainee at the Washoe County Detention Facility (WCDF). (Am. Compl., ECF No. 8.)

The court screened Plaintiff's amended complaint and allowed him to proceed with: (1) a First Amendment claim for interference with free speech by censoring legal materials against Johnson and Garza; (2) a First Amendment claim for interference with free speech based on the jail's postcard only mail policy against Washoe County and Washoe County Sheriff Darin Balaam; and (3) a Fourteenth Amendment claim for unconstitutional conditions of confinement

as a result of inadequate access to exercise against defendants German, Barrett-Venn, Rice, Sheriff Darin Balaam, and Washoe County. (Screening Order, ECF No. 9.)

Defendant Sheriff Balaam was dismissed as a defendant because he was duplicative of defendant Washoe County. (ECF Nos. 56, 88.)

On January 10, 2023, the court gave Plaintiff until January 26, 2023, to file a proof of service for Johnson, and cautioned that a failure to do so, or failure to make a showing of good cause as to why Johnson has not timely been served, would result in Johnson's dismissal without prejudice under Federal Rule of Civil Procedure 4(m). (ECF No. 81.) At a January 17, 2023, status conference, the court granted Plaintiff's oral motion to dismiss defendant Johnson from this case. (ECF No. 84.) As a result, the First Amendment claim for interference with free speech by censoring legal materials is proceeding only against Garza.

Garza moves for summary judgment, arguing that she did not violate Plaintiff's First Amendment rights, and he is entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the

other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. FACTS**

The following facts are undisputed:

Plaintiff was booked into WCDF on June 10, 2020, and was a pretrial detainee there at least up until the time he filed his response to this motion. (ECF No. 8; Pl. Decl., ECF No. 96 at 16-17 ¶ 1.) WCDF does not have a law library. (Pl. Decl., ECF No. 96 at 20 ¶ 13.) WCDF

contracts with Washoe Legal Services (WLS)[1] to provide limited civil legal services to inmates. (ECF No. 89 at 30-44.)

WLS is obligated to provide "legal assistance, including advice, consultation and drafting assistance" to inmates during the initial pleading stages of non-criminal proceedings. (*Id*.) It is required to provide legal assistance "only to the extent necessary to preserve the Prisoner's right[s] during the period of incarceration." (*Id.*) It is obligated to provide "ancillary services, including photocopies of case law or other legal materials reasonably necessary to provide the services described above." (*Id*.)

Garza is an employee of WLS. (ECF No. 73 at 1:26-28.)

The Jailhouse Lawyer's Handbook (JLH) is a legal guide published by a non-profit, the Center for Constitutional Rights. (ECF No. 89 at 54-59.) JLH is available for free online at https:www.jailhouselaw.org. (Last visited, June 15, 2023.)

On October 22, 2020, Gwen DeLorme (not a defendant) of WLS, wrote to Plaintiff and said she was enclosing, among other things, chapters 1, 2, 4 and 5 of the JLH. (ECF No. 89 at 48.)

On November 1, 2020, Plaintiff requested chapters 3, 6, and 7 of the JLH. (ECF No. 8 at 6; ECF No. 89 at 61.) Chapter 3 of the JLH is "Your Rights in Prison." (ECF No. 89 at 56.) Chapter 6 of the JLH is "What Happens After You File Your Lawsuit." (ECF No. 89 at 59.) Chapter 7 of the JLH is "The Legal System and Legal Research." (*Id*.)

---

[1] WLS is now Northern Nevada Legal Aid, but the court will still refer to it as WLS in this Report and Recommendation.

1    Plaintiff requested chapters 3, 6 and 7 of the JLH again on November 2, 2020. (ECF No. 89 at 62.) On November 4, 2020, he requested "the whole JLH." (ECF No. 89 at 20, Pl. response to Request for Admission (RFA) No. 11.)

    On November 5, 2020, WLS GARZA responded that WLS "only provide[s] the Chapters and sections that apply to your situation. Have you filed your 1983 packet with the court? Chapter 6 is regarding what happens after you have filed. If there is another section in Chapter 3 that you would like, please let us know what section. Not all of Chapter 3 will apply to you. We will send you Chapter 7." (ECF No. 89 at 62.)

    Plaintiff responded that same day saying that censoring what a prisoner is studying to protect his or her rights is an illegal act in violation of the Constitution. (ECF No. 89 at 63.) He indicated he was still requesting the complete JLH. (*Id*.)

    WLS GARZA responded that WLS does not provide a copy of the JLH to every inmate because it is too voluminous to do that. Plaintiff was advised that if he needed additional information to send a kite and they would see what they could provide. (*Id*.)

    As early as November 11, Plaintiff had received a complete copy of the JLH from his Alternate Public Defender, Marc Picker. (ECF No. 89 at 24-25, Pl. response to RFA No. 25; ECF No. 89 at 51.) At some point after he filed this lawsuit, Plaintiff lent his copy of the JLH to anther inmate and it was lost. (ECF No. 89 at 25, Pl. response to RFA No. 27.)

    On April 7, 2022, Plaintiff sent another request for a complete copy of the JLH from WLS. (ECF No. 89 at 64.) On April 12, 2022, another WLS employee replied to Plaintiff's request that they would send a full and complete copy of JLH to Plaintiff. (*Id*.) On or around April 14, 2022, WLS sent a full and complete copy of the JLH to Plaintiff. (*Id*. at 69.)

///

## B. ANALYSIS

It bears repeating that Plaintiff was allowed to proceed with a First Amendment claim based on alleged censorship of legal mail by Garza. He alleges that he requested the entirety of the JLH, but he was only given certain chapters and not others he requested.

Plaintiff's response appears to make arguments concerning his access to courts claim, but that claim has been dismissed with prejudice.

"Determining whether officials receive qualified immunity involves two inquiries: (1) whether, 'taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the violation.'" *Grabowski v. Arizona Board of Regents*, --- F.4th ---, 2023 WL 3961123, at *10 (9th Cir. 2023) (quoting *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) (per curiam)).

"To determine whether a constitutional right has been clearly established, we must 'survey the legal landscape and examine those cases that are most like the instant case.'" *Id.* (quoting *Trevino v. Gates*, 99 F.3d 911, 917 (9th Cir. 1996)). "The contours of the right 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

The court may "'consider[ ] whether there is a violation of clearly established law without determining whether a constitutional violation occurred.'" *Id.* (quoting *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 969 (9th Cir. 2010)).

Plaintiff acknowledges that there is no United States Supreme Court or Ninth Circuit case addressing the scenario presented here: a legal aid services organization contracted with a jail to provide limited legal materials to inmates in civil cases initially provides only certain chapters of

an inmate legal guidebook requested by an inmate. (ECF No. 96 at 9: "[N]either the Ninth Circuit or the U.S. Supreme Court has yet to rule on a case such as this one.")

Plaintiff argues that other cases put Garza on notice that the conduct at issue violated the Constitution. He cites *Bounds v. Smith*, 430 U.S. 817 (1977). There, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828. Plaintiff is not proceeding with an access to the courts claim as that claim was dismissed with prejudice. Nor does *Bounds* address whether a defendant violates the *First Amendment* by only providing an inmate with certain chapters of a legal guidebook.

Next, Plaintiff cites *Lewis v. Casey*, 518 U.S. 343 (1996). *Lewis* confirmed there is an "actual injury" requirement for an inmate's access to courts claim. It affirmed that *Bounds* requires that inmates be provided with the tools "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis*, 518 U.S. at 355. It "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id*. Again, *Lewis* concerned an access to courts claim, not a First Amendment censorship claim such as that proceeding here.

Plaintiff also references *Johnson v. Avery*, 393 U.S. 483 (1969). That case involved a claim that Tennessee adopted and enforced a rule that impeded illiterate prisoners from filing habeas corpus petitions when it precluded inmates from assisting other inmates with their habeas petitions. It did not address the question presented in this case.

Next, Plaintiff cites *Procunier v. Martinez*, 416 U.S. 396 (1974), *overruled in part in Thornburgh v. Abbott,* 490 U.S. 401 (1989). In *Martinez,* a class of inmates brought suit to challenge rules relating to censorship of inmate mail and a ban on using law students and paralegals for conducting attorney-client interviews. It proscribed statements that "unduly complain," "magnify grievances," or express "inflammatory political, racial, religious, or other views." *Id*. at 415. The court struck down the content-based regulation on the First Amendment rights of non-prisoners. *Id*. at 408. It did not address the standard to apply in cases involving questions of prisoner's rights. *Id.* It also did not address a factual scenario such as that presented in this case.

Plaintiff also references *Wolff v. McDonnell*, 418 U.S. 539 (1974), which addressed the procedural due process protections that apply in the prison disciplinary context, and it does not involve application of the First Amendment to the provision of legal materials.

Finally, Plaintiff relies on *Turner v. Safley,* 482 U.S. 78 (1987). *Turner* held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. This case does not involve a *prison* regulation, but a decision by an employee of a non-profit contracting with the jail to provide limited inmate law library assistance in civil cases to only provide certain chapters of the JLH.

In sum, there was no clearly established constitutional right that would encompass the conduct of which Plaintiff complains as to Garza. Therefore, Garza is entitled to qualified immunity and summary judgment should be granted in Garza's favor.

///

///

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Garza's motion for summary judgment (ECF No. 89).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 20, 2023

_____
Craig S. Denney
United States Magistrate Judge